AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>Gisselle Medina,<br><br>Defendant. | Case No. 2:25-MJ-03507-DUTY |

**FILED**
**CLERK, U.S. DISTRICT COURT**

June 8, 2025

**CENTRAL DISTRICT OF CALIFORNIA**
BY: ___CLD___ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of June 7, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 372 | Conspiracy to Impede an Officer |

This criminal complaint is based on these facts:

   *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Michael Rodriguez, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: June 8, 2025 at 2:43 p.m.

Judge's signature

City and state: Los Angeles, California

Hon. Jacqueline Chooljian U.S. Magistrate Judge
*Printed name and title*

AUSA: Mirelle Raza x6058

**AFFIDAVIT**

I, Special Agent Michael Rodriguez, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for Gisselle MEDINA ("MEDINA") for a violation of 18 U.S.C. § 372 (Conspiracy to Impede an Officer).

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; information obtained from various law enforcement personnel; and Mirandized interviews with MEDINA. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. BACKGROUND OF SPECIAL AGENT MICHAEL RODRIGUEZ

3. I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") since approximately September 2018. Prior to employment with HSI, I was a police officer and detective for the Lansing, Illinois Police Department from July 2007 until 2018. I am currently assigned to the HSI Orange County field office.

### III. STATEMENT OF PROBABLE CAUSE

4. Based on conversations with other law enforcement agents, Mirandized interviews of MEDINA, and my own knowledge of the investigation, I am aware of the following:

5. On the morning of June 7, 2025, a protest was taking place outside the area of a complex that houses an HSI office located in the area of the 6300 block of Alondra Blvd., Paramount, California (the "Paramount Office Complex").

6. The United States Border Patrol ("USBP"), along with other federal law enforcement agencies, was present at the Paramount Office Complex to provide physical safety and security to DHS property and personnel. A number of the protesters turned violent and threw objects at law enforcement vehicles.

7. At approximately 10:00 a.m., MEDINA was arrested at the scene by USBP personnel.

8. Following her arrest, MEDINA was transported to the HSI office in Santa Ana, California, for further investigation.

9. I conducted a custodial interview of MEDINA, with HSI agents Adam Gallegos and Ryan Taylor. Prior to questioning, MEDINA was advised of her Miranda Rights, which she acknowledged and waived in writing. During the interview, that began at approximately 3:20 p.m. on June 7, 2025, MEDINA was asked what had occurred at the protest. MEDINA stated the following, in substance and summary:

    a. MEDINA had originally intended to go to Home Depot, located at 6400 Alondra Blvd., Paramount, California, to purchase materials for her business. She observed the protest

near that location and recognized, based on recent events in Los Angeles and social media, that it was immigration related.

      b.    MEDINA parked nearby and, along with her boyfriend, approached and joined the protest.

      c.    Upon arriving at the protest, MEDINA prayed and became emotionally overwhelmed due to concerns about immigration enforcement in her community. She described herself as someone who "gets that way" and admitted she became "very angry."

      d.    When asked why she joined the protest, MEDINA said she wanted to support "our people," referring to the Hispanic community, whom she believed were being unfairly targeted by immigration authorities.

      e.    MEDINA was asked to describe the events leading to her arrest and stated that she saw a police vehicle and began shouting at law enforcement to "leave" and "please stop."

      f.    When asked if she was attempting to obstruct officers, MEDINA stated, "I knew what I was doing. I was trying to stop them from going over there."

10. The interview stopped at approximately 3:35 p.m., however agents re-engaged in a second interview with MEDINA at approximately 4:30 p.m., in order to clarify facts related to her statement. Agents confirmed MEDINA still understood her Miranda Rights, which she affirmed. During this second interview, MEDINA stated the following:

      a.    MEDINA had not actually seen a police vehicle. Instead, she described an incident where someone in the crowd

threw a firework. USBP officers responded by moving toward the person who threw the firework.

      b.   MEDINA and others in the crowd moved in front of the USBP officers and began yelling "stop, stop," while extending her arms outward. Agents asked MEDINA to confirm if her intention was to stop law enforcement from performing their lawful duties. MEDINA stated, "yes". MEDINA then physically demonstrated the actions she performed. MEDINA stood and spread her arms out. The interview concluded at approximately 4:35 p.m.

11. I made contact with a USBP supervisor and requested that the supervisor identify the USPS agent that made the arrest of MEDINA. The supervisor identified the agent as Agent C.L.

12. At approximately 9:03 p.m. I conducted a phone interview with Agent C.L. I confirmed that Agent C.L. was the agent that in fact arrested MEDINA and asked Agent C.L. what lead to MEDINA's arrest. In summary, Agent C.L. stated that he was on the scene at the Paramount Office Complex with many other USBP agents during the protest. An unidentified male subject, whom Agent C.L. believed was MEDINA's boyfriend, threw a rock at the agents. When USBP attempted to apprehend the male subject, MEDINA jumped in front of a USBP agent near Agent C.L., grabbed onto the agent, and prevented the arrest of the male subject who threw a rock at agents. Agent C.L. arrested MEDINA. Agent C.L. advised that MEDINA continuously apologized after the arrest was made.

## IV. CONCLUSION

13. For all of the reasons described above, there is probable cause to believe that MEDINA has committed a violation of 18 U.S.C. § 372 (Conspiracy to Impede an Officer).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this __8th__ day of
June, 2025 at 2:43 p.m.

_____
HONORABLE JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE